**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CATHERINE RUGGIERO, | |
| Plaintiff, | Civil Action No. 19-16206 (MAS) (DEA) |
| v. | **MEMORANDUM OPINION** |
| ELI LILLY AND COMPANY, *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on Defendants Eli Lilly and Company ("Lilly") and Eric Blanton's ("Blanton" and together with Lilly, "Defendants") Motion for Summary Judgment. (ECF No. 89.) Plaintiff Catherine Ruggiero ("Ruggiero") opposed (ECF No. 96), and Defendants replied (ECF No. 97). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Defendants' Motion.

**I.     BACKGROUND**

Ruggiero brings this action against her current employer (Lilly) and former supervisor (Blanton) alleging employment discrimination. Lilly is an international company that researches, manufactures, markets, and distributes pharmaceuticals. (Defs.' Statement of Undisputed Material

Facts ("DSUMF") ¶ 1, ECF No. 89-2.)[1] Ruggiero, now 58 years old, began working at Lilly in 2002. (*Id.* ¶ 11.) In 2013, Ruggiero moved into Lilly's Diabetes Unit, where she currently is an Executive Sales Representative. (*Id.* ¶ 12, 20.)

According to Ruggiero, the discrimination began in 2017, when Lilly offered employees, including Ruggiero, a Voluntary Employment Retirement Program ("VERP"). (*Id.* ¶ 21.) Ruggiero declined the package, and instead chose to continue her employment with Lilly. (*Id.* ¶¶ 22-23.) According to Ruggiero, after she rejected the VERP, Defendants embarked on a pattern of severe discrimination and harassment against her because of her age. (*Id.* ¶ 24.)

About the same time that Ruggiero declined the VERP, Blanton began to serve as Ruggiero's immediate supervisor. (*Id.* ¶ 34.) That relationship became the cause of several unpleasant incidents. In 2018, Blanton gave Ruggiero a performance rating of Not Meeting Expectations ("NME"). (*Id.* ¶ 35; 2018 Performance Review Ex. H, ECF No. 89-11.) In 2019, Blanton gave Ruggiero another performance rating of NME. (*Id.* ¶¶ 45-47, 2019 Performance Review Ex. I, ECF No. 89-12.) Blanton also received feedback from other managers that Ruggiero had low emotional intelligence. (*Id.* ¶ 48.) During one incident, Blanton noted Ruggiero's compliance violation in Lilly's performance management software but did not input a similar violation of Ruggiero's colleague. (Pl.'s Responding Statement of Additional Facts ("PRSAF") ¶ 42, ECF No. 96-3.)

---

[1] Ruggiero disputes some of Defendants' factual representations. (*Compare* DSUMF, *with* Plaintiff's Responding Statement of Additional Facts ("PRSAF"), ECF No. 96-3.). Ruggiero, however, failed to comply with Local Civil Rule 56.1, which makes clear that if any facts are disputed, they must state "each material fact in dispute and cit[e] to the affidavits and other documents submitted in connection with the motion." Loc. Civ. R. 56.1(a). Ruggiero simply states "denied" to factual disputes. Such a failure "entitles the Court to deem undisputed each statement of fact that Plaintiff disputed without citing to the record." *Bulboff v. King Aircraft Title, Inc.*, No. 19-18236, 2021 WL 1186822, at *1 (D.N.J. Mar. 29, 2021). Practically, however, the Court reaches the same result in granting summary judgment even if it disregards the "contested" facts.

Under Blanton's new leadership, Ruggiero's performance suffered which was inconsistent with her past work. For example, Ruggiero's performance reviews in 2016, 2017 and 2020 reflected performance ratings of Meeting Expectations, unlike her performance reviews under Blanton. (DSUMF ¶¶ 32, 33, 50.) In the end, Ruggiero and Blanton's head-to-head battle, which lasted from 2018 to 2019, fizzled out when Lilly later investigated and ultimately demoted Blanton for several managerial errors. (*Id.* ¶¶ 98-99.)

Ruggiero's grievances do not end with Blanton, however. According to Ruggiero, the discrimination continued when she applied for, and was denied, two positions on other sales teams within Lilly. (*Id.* ¶¶ 52, 58, 67, 73.) Ruggiero also claims she was treated unfairly through a series of incidents, including forced disclosure of her sexual orientation and experience of inappropriate dialogues with colleagues and supervisors. (PRSAF ¶ 66; DSUMF ¶¶ 93-94, 96.) It is not clear, however, precisely how Ruggiero's unfair treatment or awkward conversations in the workplace tie into her claimed experience of age discrimination.

On July 1, 2019, Ruggiero sued Lilly and Blanton in New Jersey Superior Court. (*See generally* Compl., ECF No. 1-2.) The Complaint raises several causes of action: Negligent Hiring/Retention (Count I), Negligent Supervision and Training (Count II), *Respondeat Superior* (Count III), Violation of the New Jersey Law Against Discrimination ("NJLAD") (Count IV), Intentional Infliction of Emotional Distress (Count V) and Negligence/ Recklessness (Count VI). (*Id.* ¶¶ 75-121.) On August 1, 2019, Defendants removed this action to the United States District Court for the District of New Jersey. (ECF No. 1.) The parties embarked on (and finished) discovery. (*See* ECF No. 78 (stipulating to complete fact discovery).) Thereafter, Defendants filed a Motion for Summary Judgment. (ECF No. 89.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

### III. DISCUSSION

Ruggiero alleges several claims against Defendants stemming from an alleged "pattern and practice of discrimination and hostile work environment." (Pl.'s Opp'n Br. 5, ECF No. 96.) Specifically, Ruggiero claims that because of her age, she endured humiliation and ridicule, disparate incident reports as compared to younger employees, poor performance reviews, all at the hands of Blanton. Ruggiero also declares that she did not receive any raises, bonuses, or promotions during that period.[2] (*Id.*)

Predictably, Defendants dispute Ruggiero's claims. According to them, Ruggiero fails to present "objective evidence that anyone at Lilly has taken an adverse action against her or harassed her because of age or any other protected classification." (Defs.' Moving Br. 1, ECF No. 89-1.)

---

[2] Ruggiero briefly alleges discrimination based on her sexual orientation but abandons the claim. (*See* Pl.'s Opp'n Br. Ex. F ("Ruggiero Dep. Tr.") 239:14-17 ("[Q] In your complaint, are you alleging that Lilly has discriminated against you based on your sexual orientation? [A] No.").) In any event, the record does not reflect that Blanton forced Ruggiero to disclose her orientation as she claimed. (*Id.* 231:10-11 ("And he's like, what are you? And I said . . . I don't know what you -- I said I'm bisexual").) Nor does she explain how this disclosure resulted in discrimination. Based on abandonment and failure to put forward any facts that support a claim of sexual orientation discrimination, the Court dismisses any theory of discrimination on this basis.

Defendants highlight that Ruggiero is still employed at Lilly, and that she has not been demoted or transferred. (*Id.*) And although Lilly admits that Ruggiero was not selected for two positions for which she applied, those two positions would not have been promotions. (*Id.*) Nor is there any evidence that the hiring managers considered her age when they decided not to award her the positions she sought. (*Id.*)

The Court considers Ruggiero's claims in turn.

A. **Ruggiero's New Jersey Law Against Discrimination Claim.**

To begin, Ruggiero alleges that Defendants violated the New Jersey Law Against Discrimination ("NJLAD") on the basis of her age. (Compl. ¶¶ 102-12.) Specifically, Ruggiero claims that Defendants subjected her to discrimination and a hostile work environment during her tenure at Lilly. (*Id.*) The Court begins by addressing the parties' most significant disagreement, whether Ruggiero's hostile work environment claim can survive summary judgment.

1. **Hostile Work Environment**

As an initial theory, Ruggiero contends that Defendants violated the NJLAD because she was subjected to a hostile work environment. (Pl.'s Opp'n Br. 5.) The NJLAD states as follows:

> It shall be an unlawful employment practice, or . . . unlawful discrimination . . . [f]or an employer . . . to refuse to hire or employ or to bar or to discharge . . . unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment[.]

N.J. Stat. Ann. § 10:5-12. To establish a claim for hostile work environment predicated on age discrimination, a plaintiff must demonstrate that the complained-of conduct: "(1) would not have occurred but for the employee's age, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment were altered and that the working environment was hostile or abusive." *Shock v. E. I. Du Pont De Nemours & Co.*, No. 16-3410, 2017 WL 3122656, at *5-6 (D.N.J. July 21, 2017) (quoting *Incorvati v. Best Buy Co.*,

No. 10-1939, 2010 WL 4807062, at *9 (D.N.J. Nov. 16, 2010)). To make such a determination, courts must consider "'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 622 (N.J. 2002)). As the Third Circuit instructs, "offhand[] comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (internal quotation marks omitted).

With the standard above in mind, the Court turns to Ruggiero's claim that she was subjected to a hostile work environment. Defendants contend that Ruggiero has not provided any facts that support a finding that Lilly or its agents subjected her to severe or pervasive harassment such that she experienced a hostile work environment. (Defs.' Reply Br. 11-12, ECF No. 97.) The Court agrees. Considering the totality of the circumstances, Ruggiero fails to meet the high bar of severe or pervasive harassment.

For one, Ruggiero's complaints are not sufficient to establish that Ruggiero was subject to "severe or pervasive" conduct. *Grossberg v. Hudson Cnty. Dep't of Soc. Servs.*, No. 15-1456, 2017 WL 3045316, at *5 (D.N.J. July 18, 2017) (granting summary judgment on age discrimination claim because no "fact finder [could] reasonably conclude that Defendant's workplace 'permeated with discriminatory intimidation, ridicule, and insult.'" (quoting *AMTRACK v. Morgan*, 536 U.S. 101, 116 (2002)), *aff'd sub nom.*, *Grossberg v. Hudson Cnty. Dep't of Hum. Servs.*, 740 F. App'x 762 (3d Cir. 2018). At bottom, Ruggiero predicates this claim on the fact that she was told she "needed to learn to communicate and 'understand' younger employees and that she had no 'emotional intelligence' to handle customers," but she provides no further details about who said this or when it was said. (Pl.'s Opp'n Br. 13.) Ruggiero couples this offending statement by adding

7

that another unspecified employee on an unspecified date told her that she was old and did not know how to speak to young people. (*Id.*) But even comments that improperly reference Ruggiero's (or any other employees) age are not necessarily enough to sustain an age discrimination claim under the NJLAD if they do not rise to the level of severe or pervasive. *Ventura v. Montclair State Univ.*, No. 08-5792, 2011 WL 6339656, at *11 (D.N.J. Dec. 19, 2011) (granting summary judgment where plaintiff's supervisor called her old). As such, these allegations are not enough to sustain an age discrimination claim.

Those comments aside, many of Ruggiero's allegations are simply conclusory and do not provide a basis for denying summary judgment.[3] *Celotex*, 477 U.S. at 325. For example, Ruggiero claims that Lilly "promoted the younger/older dynamics making sure that older people understood that they were no longer wanted at Lilly."[4] (Pl.'s Opp'n Br. 13.) But Ruggiero provides no facts that support such a conclusion or why she felt that way. *Mauriello v. Sears Roebuck & Co.*, No. 13-1676, 2014 WL 67312, at *4 (D.N.J. Jan. 8, 2014) (dismissing age discrimination claim where the complaint failed to "provide specific examples of instances where the alleged harassment occurred.") All in all, Ruggiero may not sustain a hostile work environment claim because there is no genuine dispute of material fact. The standard is an exacting one, and a few offhand (and if true, inappropriate) comments are insufficient to allow a factfinder to conclude that Ruggiero's work environment "was hostile or abusive." *Shock*, 2017 WL 3122656, at *5-6.

---

[3] Ruggiero also claims that in 2017, Sales Director Bertika Quintero announced that Lilly would be "getting rid of" older employees. (Pl.'s Opp'n Br. 12.) But this claim falls outside of the period in which she claims she experienced discrimination. (Defs.' Moving Br. 18 ("The crux of Plaintiff's [NJLAD] claim is that [Defendants] discriminated against her and created a hostile work environment *after* she refused to participate in the VERP." (emphasis added)).)

[4] Other examples of Ruggiero's conclusory allegations include: (1) Defendants made false accusations against her; (2) Defendants humiliated Plaintiff during business meetings and conference calls; and (3) Blanton only hired individuals that were younger than 40 years old. (*See* Pl.'s Opp'n Br. 13-14.)

## 2. Disparate Treatment

The Court moves next to whether Ruggiero may sustain a claim for discrimination under a disparate treatment analysis. In her opposition, Ruggiero affirmatively disclaims that she asserted an NJLAD discrimination claim. (Pl.'s Opp'n Br. 11 ("Defendants improperly and erroneously conflate the standards of a hostile work environment [claim] . . . with the McDonnell-Douglas burden-shifting analysis for adverse action claims.").) However, both Ruggiero's Complaint and briefing in opposition to summary judgment set forth allegations that attempt to depict an adverse employment action. Specifically, Ruggiero claims that Lilly denied her two positions for which she applied, that she received a formal reprimand in the form of a compliance violation when another employee did not, and that she was stripped of her "champ role."[5] (Pl.'s Opp'n Br. 13-15.) Taking all inferences in favor of Ruggiero, the Court will proceed with the proper analysis for these allegations.

To analyze discrimination claims under the NJLAD, New Jersey adopted the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016) (citing, among others, *McDonnell Douglas*, 411 U.S. at 802-03). The *McDonnell Douglas* framework requires as follows: (1) a plaintiff first must make a prima facie case of discrimination, (2) the burden then shifts to the defendant, who must articulate "legitimate," "nondiscriminatory reason[s] for its action[]," and, if the defendant satisfies that burden, (3) the burden shifts back to the plaintiff to prove that the employer's "nondiscriminatory explanation is merely a pretext for the discrimination or retaliation." *Id.* at 842 (citing *McDonnell Douglas*, 411 U.S. at 802-04).

---

[5] Ruggiero never explains what the "champ role" is, however, Defendants explain that "Champ" is the title given to an employee tasked with encouraging team members to sell a particular product. (DSUMF ¶ 86.)

9

At step one, to establish a prima facie case of discrimination, a plaintiff must demonstrate that (1) she is a member of a protected class; (2) she is qualified for the position; (3) she was subject to an adverse employment action; and (4) "the adverse action was taken under circumstances giving rise to an inference of discrimination." *Ewell v. NBA Props., Inc.*, 94 F. Supp. 3d 612, 620 (D.N.J. 2015). An employee suffers an adverse employment action if the action is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment"—in other words, "material." *Tourtellotte*, 636 F. App'x at 842 (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)).

At step three, to survive summary judgment, a plaintiff must submit evidence which "casts sufficient doubt upon each of the legitimate reasons" that the defendant asserted or "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994). To make this showing, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] nondiscriminatory reasons." *Tourtellotte*, 636 F. App'x at 842 (alteration in original) (internal quotations and citations omitted). Applying this framework to Ruggiero's claim, the Court begins by analyzing whether sufficient facts support her claim for discrimination at the summary judgment stage.

As an initial matter, a significant portion of Ruggiero's allegations do not constitute an adverse employment action. For instance, Ruggiero dedicates considerable ink to allegations that Lilly failed to reprimand other employees. (Pl.'s Opp'n Br. 17.) But Ruggiero must show that Lilly's practices were "materially adverse" to her, not that she believed her coworkers deserved to be punished more than they were. *Kimber-Anderson v. City of Newark*, No. 08-6309, 2011 WL

10

773032, at *5 (D.N.J. Feb. 25, 2011), *aff'd*, 502 F. App'x 210 (3d Cir. 2012) (finding that "none of [p]laintiffs' allegations regarding the abbreviated hiring process for male [employees] or the failure of the city to remove the workers once they failed to become certified are actionable.").

Moving to Ruggiero's other claims, she next asserts that Lilly failed to "promote" her after she applied for two new positions within the company. Lilly, for its part, counters that the positions were lateral positions and not promotions. In this Circuit, "a purely lateral transfer, or denial thereof, will generally not be regarded as an adverse employment action" unless it is "a position that an employee cannot do or that renders an employee worse off in terms of working conditions or economic opportunity." *Flores v. Home Depot, Inc.*, No. 01-6908, 2003 WL 1793388, at *23 (E.D. Pa. Apr. 3, 2003) (internal citations omitted). Ruggiero fails to address whether these two positions were lateral moves or promotions.

Although all facts are construed in the light most favorable to Ruggiero, the Court fails to see why these two positions were anything other than lateral moves. First, the titles of the two positions were remarkably similar to the title that Ruggiero already had. Ruggiero held the role of Executive Sales Representative for the Diabetes Unit. Ruggiero applied for two other positions: (1) Neuroscience Sales Representative, and (2) Rheumatology Senior Sales Representative. (Pl.'s Opp'n Br. Ex. 96-2 ("Ruggiero Cert.") ¶¶ 6-7.) Moreover, the pay for both positions was similar to Ruggiero's pay at that time. At the time, Ruggiero was paid at an S4 level in Lilly's pay scale. (DSUMF ¶ 53.) The two positions to which she applied had a pay scale between S1 and S5. (*Id.* ¶¶ 54, 69.) Furthermore, Ruggiero fails to provide any facts that she would have been entitled to be paid any higher than her current salary at S4. Ruggiero, accordingly, has not carried her burden to show that the positions were promotions.

Next, Ruggiero alleges that she was stripped of her "champ role."[6] (Pl.'s Opp'n Br. 14.) According to Ruggiero, "champ roles help sales associates to move to higher positions." (*Id.*) But Defendants argue that (1) Ruggiero was removed from her champ role because she failed to meet her sales goals, and (2) in any event, champ roles change every year. (Def.'s Response to Plaintiff's Statement of Additional Facts ¶ 47, ECF No. 97-1.) Moreover, Ruggiero admits that the "champ role" changed yearly. (Ruggiero Dep. Tr. 126:11-14 ([Q] "I think you said that every year you can ask for a new champ role or be reassigned; is that right? [A] Yes.").) The Court finds that although it may credit Ruggiero's claim that she was stripped of her champ role, Defendants offer a plausible reason that satisfies its burden to articulate a legitimate, non-discriminatory reason for the discharge. *Venegas v. Cosm. Essence, L.L.C.*, No. 4634-13T1, 2015 WL 588403, at *5 (N.J. Super. Ct. App. Div. Feb. 13, 2015). In any event, no facts came to light in discovery that suggest the passing-of-the-torch for the champ role recipient was tied to Ruggiero's age.

In further support of her discrimination claim, Ruggiero also emphasizes that Blanton recorded Ruggiero's compliance violation but did not record the similar violation for another employee. Defendants, for their part, claim that the failure to record both violations was simply a clerical error. (Defs.' Moving Br. 15 n.3.) "[F]ormal reprimands that result in a notation in an employee's personnel file" may constitute an adverse employment action. *Seebald v. Praxair, Inc.*,

---

[6] Defendants contend that much of Plaintiff's responsive statement of material facts should be disregarded by the Court, including the allegation that she was stripped of her champ role, because Plaintiff does not support it with evidence including citations to affidavits or other materials in compliance with Local Civil Rule 56.1(a). (Defs.' Reply Br. 4.) Much to the Court's chagrin, in several instances where Plaintiff does cite to a document, Plaintiff simply cites the allegations in the Complaint. (PRSAF ¶¶ 29-30.) But "[u]nsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Future Sanitation, Inc. v. Evergreen Nat'l Indem. Co.*, No. 17-3471, 2019 WL 6456474, at *6 (D.N.J. Nov. 30, 2019) (citing *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019)). Thus, Defendants are correct that much of Ruggiero's responsive statement of facts fails to properly cite to the record. And so the Court may disregard such unsupported statements. Even with these statements, however, Ruggiero fails to carry her burden.

No. 03-2172, 2004 WL 350912, at *42 (E.D. Pa. Jan. 21, 2004) (internal citations omitted); *Colson v. Cablevision MFR, Inc.*, No. 05-5639, 2008 WL 687257, at *4 (D.N.J. Mar. 11, 2008) (finding written reprimand was an adverse action because it barred plaintiff from obtaining a transfer or promotion for a 4-6 month period, and, in fact, was the basis for denying a lateral transfer.) Here, however, Ruggiero fails to sufficiently raise a material dispute that the notation resulted in an adverse employment action. To reiterate, an adverse employment action requires alteration of an "employee's compensation, terms, conditions, or privileges of employment." *Cardenas*, 269 F.3d at 263 (internal citation omitted). Ruggiero does not demonstrate that any condition of her employment changed as a result of the formal reprimand in her employee file. Nor does she contend that the formal reprimand popped up later in her career and acted as an obstacle to achieving her employment goals. Thus, the Court must dismiss this claim against Lilly.[7]

### B. Intentional Infliction of Emotional Distress.

The Court transitions to Ruggiero's intentional infliction of emotional distress ("IIED") claim. A claim for IIED requires a showing "(1) that the defendant acted intentionally or recklessly, both in doing the act and in producing emotional distress; (2) that the defendant's conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency; (3) that the defendant's actions were the proximate cause of the emotional distress; and (4) that the emotional distress suffered was so severe that no reasonable person could be expected to endure it." *Wigginton v. Servidio*, 734 A.2d 798, 806 (N.J. Super. Ct. App. Div. 1999). When a plaintiff brings

---

[7] As a result of this Court's decision as to the NJLAD claims, this Court will also dismiss the NJLAD aiding and abetting claims brought by Plaintiff against Blanton. Generally, only an "employer" may violate the NJLAD, and "an individual supervisor is not defined as an 'employer' under the LAD." *Tarr v. Ciasulli*, 853 A.2d 921, 928 (N.J. 2004); *Galman v. Sysco Food Servs. of Metro N.Y. LLC*, 674 F. App'x 211, 214 n.2 (3d Cir. 2016) ("[S]ince no violation of the NJLAD occurred, this claim must fail because there is no one to aid or abet." (citing *Tarr*, 853 A.2d at 929)).

a claim under the NJLAD with another common law claim but the "factual predicates" are the same, the common law claims are barred. *See Belfort v. Morgan Props., LLC*, No. 16-5207, 2018 WL 3201787, at *10 (D.N.J. June 29, 2018). "Because of the broad availability of remedies under the [NJ]LAD, both state and federal courts in New Jersey have frequently held that the [NJ]LAD bars common law claims based on the same operative facts as underlie the [NJ]LAD claim." *Everson v. JP Morgan Chase Bank*, 12-07288, 2013 WL 1934666, at *2 (D.N.J. May 8, 2013) (citations omitted).

Here, the Court easily disposes of this claim because Ruggiero pleads the same facts in support of the IIED claim as those underlying the NJLAD claim. (*See, e.g.*, Compl. ¶¶ 113-16.) Thus, the Court finds that the IIED claim is duplicative of the NJLAD claim and barred.

Even if the Court did not find the IIED claim duplicative, the claim fails as a matter of law. As Defendants correctly argue, Ruggiero does not allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, 431 F. Supp. 3d 488, 516 (D.N.J. 2019) (quoting *Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857 (1988)). Although the Court acknowledges Ruggiero's contention that she developed psychological disorders, she provides no specific facts that would lead a reasonable factfinder to conclude that Defendants engaged in conduct that was extreme or outrageous. Indeed, the Court rejected a similar theory in finding that Lilly did not engage in "severe or pervasive" conduct that supports a hostile work environment claim. The same analysis applies here.

      **C.**     **Ruggiero's Negligence/Recklessness Claims Must Be Dismissed Because the New Jersey Workers' Compensation Act Bars Employee's Claims of Negligence.**

Moving to Ruggiero's claims for "negligent hiring/retention" and "negligent supervision and training," Defendants argue that each of the negligence-based claims are barred by the New Jersey Workers' Compensation Act ("NJWCA"), N.J. Stat. Ann. § 34:15-8. The NJWCA provides in pertinent part:

> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.

N.J. Stat. Ann. § 34:15-8; *see also* § N.J. Stat. Ann. 34:15-8; *Powell v. Verizon*, No. 19-8418, 2019 WL 4597575, at *12 (D.N.J. Sept. 20, 2019) (internal citations omitted) ("[N]egligence claims are subsumed by the scheme set up by the Workers Compensation Act."). An employee "cannot sue his [or her] employer in negligence . . . nor can the employee sue a co-employee," because all such actions are barred by the NJWCA. *Wellenheider v. Rader*, 227 A.2d 329, 333 (N.J. 1967) (internal citations omitted); *see also* N.J. Stat. Ann. § 34:15-8. The NJWCA "provides the sole remedy under which a plaintiff may seek a remedy for negligent conduct by an employer or co-employee." *Piantadosi v. Pub. Serv. Elec. & Gas Co.*, No. A-2778-08T3, 2011 WL 3177318, at *14 (N.J. Super. Ct. App. Div. July 28, 2011) (citing *Smith v. Exxon Mobil Corp.*, 374 F. Supp. 2d 406, 424 (D.N.J. 2005)); *see also Gaines v. United Parcel Serv., Inc.*, No. 2:13-3709, 2014 WL 1450113, at *7 (D.N.J. Apr. 14, 2014) (dismissing claim for negligence/breach of ordinary care because NJWCA is the exclusive remedy). This is true regardless of the kind of injury alleged, including employment related injuries. *See, e.g., Cong Su v. David's Cookies*, No. A-1121-08T1, 2009 WL 2426336, at *3 (N.J. Super. Ct. App. Div. Aug. 10, 2009) (employee's claims of "failure to train, failure to supervise, [and] failure to warn" "clearly" fall within the province of the

NJWCA); *Cremen v. Harrah's Marian Hotel Casino*, 680 F. Supp. 150, 155-56 (D.N.J. 1988) (allegation of negligent hiring and retention barred by exclusive remedy provision of the NJWCA); *Silvestre v. Bell Atl. Corp.*, 973 F. Supp. 475, 486 (D.N.J. 1997) (finding that "an employee cannot . . . assert negligent hiring and supervision against an employer" where the underlying injury was based in discrimination), *aff'd*, 156 F.3d 1225 (3d Cir. 1998).

Ruggiero argues that her claim constitutes an exception to the NJWCA bar because it is an intentional wrong. (Pl.'s Opp'n Br. 24-26.) This argument fails on its face. It is clear to the Court that Counts I and II are based in negligence, not an intentional act. Ruggiero's Complaint confirms as much. (Compl. ¶ 79 ("The negligence/gross negligence/recklessness of defendants in hiring Blanton, proximately caused Plaintiff's injuries.").) Ruggiero's attempt to recharacterize the claims as alleging intentional acts on behalf of Lilly is without merit. Nor does Ruggiero show that Defendants' conduct met the intentional-wrong standard for overcoming the exclusivity of the workers' compensation remedy. Ruggiero did not provide sufficient evidence that Lilly knew or should have known that the claimed injury would result. Plaintiff did not report to anyone but Blanton at Lilly that she believed Blanton gave her an unfair review in 2018. (DSUMF ¶ 37; Pl. Dep. Tr. 159:3-5.) In addition, evidence shows that Lilly reacted to employees' reports and has its own investigations on employees' wrongdoing. Contrary to Ruggiero's claim that Lilly "knew, ratified and encouraged Blanton's conduct," Lilly reacted to Ruggiero's report in one incident. (Pl.'s Opp'n Br. 25; DSUMF ¶¶ 93-95.) That is, in 2019, Ruggiero reported to Lilly's HR that Blanton was "inappropriate" on a conference call. (DSUMF ¶ 93.) Lilly's HR then notified Blanton of Ruggiero's feelings and Blanton corrected his behavior in response. (*Id.* ¶¶ 94-95.) Shortly after, Blanton was demoted as a result of a Lilly investigation which uncovered four performance errors. (*Id.* ¶¶ 98-99; Defs.' Moving Br. 14-15.) The Court, therefore, dismisses Count I and II.

### D. *Respondeat Superior* Claim

The Court next addresses Ruggiero's *respondeat superior* claim. In New Jersey, the doctrine is not an independent cause of action, but instead, is a principle for imposing liability on the employer of a person who has committed some tort. *Powell*, 2019 WL 4597575, at *13 (citations omitted). "*Respondeat superior* is not in itself, then, a 'claim upon which relief may be granted.'" *Id.* (quoting Fed. R. Civ. P. 12(b)(6)).

Thus, *respondeat superior* may not be maintained as a separate cause of action. By contending that Lilly's employees committed various acts against her and by bringing claims against Blanton, Ruggiero is asserting claims based on the theory of *respondeat superior* as they relate to the company. The Court thus dismisses this independent "claim." *See Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 434 (D.N.J. 2000); *Russo v. Ryerson*, No. 01-4458, 2006 WL 477006, *28 n.24 (D.N.J. Feb. 27, 2006).

### IV. <u>CONCLUSION</u>

For the above reasons, the Court grants Defendants' motion for summary judgment. An appropriate order will follow.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE